UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MARLENE BONAFEDE, FRANK BONAFEDE,
MICHAEL HINDERLITER, and KATHERINE
HINDERLITER,

                                  Plaintiffs,
                v.                                **DECISION AND ORDER**
                                                        10-CV-956S

ADVANCED CREDIT SOLUTIONS, LLC,

                                  Defendant.

## I.  INTRODUCTION

On November 29, 2010, Plaintiffs Marlene and Frank Bonafede, and Michael and Katherine Hinderliter filed a complaint alleging various violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, et seq. Defendant failed to appear and defend this action, which resulted in the Clerk of the Court entering default on May 12, 2011. Presently before this Court is Plaintiffs' Motion for Default Judgment pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure. For the following reasons, Plaintiffs' motion is granted.

## II.  BACKGROUND

Plaintiff Marlene Bonafede is the mother of Plaintiffs Frank Bonafede and Michael Hinderliter, and the step-daughter of Plaintiff Katherine Hinderliter. (Comp., Docket No. 10-2, ¶ 4.) Sometime prior to October 21, 2010, Defendant Advanced Credit Solutions, LLC ("ACS") began repeatedly calling Katherine Hinderliter's home seeking to collect payment on a debt allegedly owed by Frank. (Comp. ¶ 14.) ACS was informed that the number it was calling was not the correct one for reaching him. (Comp. ¶ 15.) On October

1

21, 2010, ACS again called Katherine's home. (Comp. ¶ 16.) This time, ACS asked to speak with Marlene, who was available and took the call. (Id.) ACS then proceeded to inform her that it was a law firm attempting to collect a debt from her son Frank, and threatened to issue a warrant and to take him to court if payment arrangements were not immediately made. (Id.) ACS then sought to collect the debt owed directly from Marlene. (Id.) During this call, ACS also disclosed her Social Security number and asked Marlene to verify it. (Id.)

Michael Hinderliter was standing next to his mother at the time of the call and asked to speak with ACS. (Comp. ¶ 17.) ACS identified itself as "Steve Donatello" of "The Law Offices of Steve Donatello," a fictitious name and firm. (Comp. ¶¶ 18, 20, 24.) ACS repeated its threats to issue a warrant for Frank and then told Michael that issuance of this warrant would be his fault, before hanging up. (Comp. ¶ 19.) Fifteen minutes later, Michael dialed the number from which ACS had called and was greeted by a new voice identifying itself as Steve Donatello. (Comp. ¶ 20.) Only later, when Michael again called the number, did he learn it belonged to ACS. (Comp. ¶ 24.)

Frank was later told of these events. (Comp. ¶ 21.)

### III. DISCUSSION

#### A.   Default Judgment Standard

Before obtaining default judgment, a party must first secure a Clerk's Entry of Default by demonstrating, by affidavit or otherwise, that the opposing party is in default. See Fed. R. Civ. P. 55(a). Once default has been entered, the allegations of the complaint that establish the defendant's liability are accepted as true, except for those relating to the

amount of damages. Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992).

In considering whether to enter default judgment, the court must determine whether the facts alleged in the complaint are sufficient to state a claim for relief as to each cause of action for which the plaintiff seeks default judgment. Further, where the damages sought are not for a sum certain, the court must determine the propriety and amount of the default judgment. See Fed. R. Civ. P. 55(b)(2). Damages must be established by proof, unless the damages are liquidated or "susceptible of mathematical computation." Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974). All reasonable inferences from the evidence presented are drawn in the moving party's favor. See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981).

    **B.**    **Liability**

        **1.**    **Statutory Damages**

Plaintiffs claim a wide range of violations under numerous provisions of the FDCPA, including sections 1692b(1) and 1692c(b), 1692d(1) and (2), 1692e(2)(A), (4), (5), (10), (14), and 1692f and 1692f(1).

Section 1692b of Title 15 requires that any debt collector communicating with any person other than the person owing the debt shall "(1) identify himself, state that he is confirming or correcting location information concerning the consumer, and, only if expressly requested, identify his employer."

Further, 15 U.S.C. § 1692c(b) provides in part that:

> [A] debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if

otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

Section 1692d of Title 15 prohibits debt collectors from engaging in harassing or abusive conduct. The statute provides as follows:

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> * * *
>
> (2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.

Section 1692e also prohibits debt collectors from using false, deceptive, or misleading representations to collect a debt. That statute prohibits:

> (2) The false representation of - (A) the character, amount, or legal status of any debt . . . .
>
> * * *
>
> (4) The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.
>
> * * *
>
> (5) The threat to take any action that cannot legally be taken or that is not intended to be taken.
>
> * * *
>
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.
>
> * * *

> (14) The use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization.

Finally, section 1692f prohibits debt collectors from using unfair or unconscionable means to collect or attempt to collect any debt. The statute prohibits conduct such as "[t]he collection of any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

Plaintiffs allege that ACS violated 1692b(1) and 1692c(b) by failing to limit the subject of their communications with Marlene and Michael to obtaining information regarding Frank's, the debtor's, location. 1692d and d(2) were allegedly violated when ACS falsely represented that it was a law firm, disclosed confidential information to other family members, solicited payment from someone other than the debtor, and threatened to issue a warrant and take Frank to court. For principally the same reasons, Plaintiffs alleged Defendant violated 1692e, and 1692e(2)(A), (4), (5), (10), and (14). Further, Plaintiffs alleged that ACS intimidated Marlene by threatening her son, revealing that it was in possession of Marlene's social security number, and attempting to collect payment from Marlene, all in violation of 1692f and 1692f(1). Similarly, ACS threatened Michael by telling him that ACS would issue a warrant and that it would be his fault, before immediately hanging up the phone. Finally Katherine's FDCPA rights were violated because ACS repeatedly and continuously called her home phone for purposes of harassing her even after she informed ACS that they had the wrong number and that it was upsetting her ill husband. Based on the undisputed facts taken as true, this Court finds that ACS violated these sections as alleged.

Section 1692k(a)(2)(A) authorizes up to $1,000 in statutory damages per plaintiff for

any violation of the FDCPA.  The specific amount of statutory damages, not to exceed $1,000, falls within the court's discretion.  See Savino v. Computer Credit, Inc., 164 F.3d 81, 86 (2d Cir. 1998).  Factors to be considered by the court in determining an appropriate statutory damages award include the frequency, persistence, and nature of the debt collector's noncompliance, the debt collector's resources, the number of individuals adversely affected, and the extent to which the debt collector's non-compliance was intentional.  See 15 U.S.C. § 1692k(b)(1).

Here, ACS is deemed to have admitted calling Katherine's home phone number on a number of occasions prior to October 21, 2010.  The complaint does not specify however, how many times ACS called.  This Court only knows that "on more than one occasion, Defendant ACS was notified that they were not calling the proper telephone number."  (Comp. ¶ 15.)  As to the remaining allegations, they stem principally from a single phone call made by ACS on October 21, 2010 during which it committed the aforementioned violations.  Following that call, Michael called back and a different male voice answered and stated he was Steve Donatello.  Only later, when Michael called again, did ACS provide its true business name.

Here, Plaintiff's counsel requests the statutory maximum of $1,000 in damages, per plaintiff, which is excessive.  Although these acts violate the FDCPA, they are not so persistent or egregious as to warrant the statutory maximum penalty.  As already noted, the record is bare of specific factual allegations regarding the frequency or persistence of the calls to Katherine's home.  Under these circumstances this Court finds that the violations against Katherine entitle her to $250 in statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A).  See Estay v. Moren and Woods LLC, No. 09-CV-620A, 2009 WL

5171881, at *2 (W.D.N.Y. Dec. 22, 2009) (awarding plaintiff $250 in statutory damages where defendant made harassing calls on more than one occasion, made empty threats of litigation, and improperly disclosed information about the consumer's debt to a third party). As to the remaining Defendants, this Court finds that Defendant's violations entitle them to $500 in statutory damages each. See Barksdale v. Global Check & Credit Servs., LLC, No. 09-CV-1034A, 2010 WL 3070089, at *2 (W.D.N.Y. Aug. 4, 2010) (awarding plaintiff $500 in statutory damages where defendant made frequent harassing calls, including threats to take legal action without intent to do so, and failed to provide required debt validation information); cf., Annis v. E. Asset Mgmt., LLC, No. 08-CV-458S, 2010 1035273, at *5 (W.D.N.Y. Mar. 18, 2010) (awarding $1,000 in statutory damages where defendant's violations of the FDCPA included four months of calling plaintiff almost daily, threatening litigation, and targeting both the plaintiff and her family); Fontana v. C. Barry & Assocs., No. 06-CV-359A, 2007 WL 2580490 (W.D.N.Y. Sept. 4, 2007) (awarding plaintiff $250 in statutory damages where defendant's conduct was not frequent or persistent, but included improperly notifying plaintiff's family members of the debt); Mostiller v. Chase Asset Recovery Corp., No. 09-CV-218A, 2010 WL 335023, at *2 (W.D.N.Y. Jan. 22, 2010) (awarding $150 in statutory damages where defendant's noncompliance consisted of one telephone message threatening unintended legal action).

    **2.  Actual Damages**

  Section 1692k(a)(1) authorizes an award of "any actual damage sustained by [any] person as a result of [a defendant's violation of the FDCPA]." "Actual damages are intended to compensate a plaintiff for "out of pocket expenses, personal humiliation, embarrassment, mental anguish, and/or emotional distress that results from a defendant's

failure to comply with the FDCPA." See Mostiller, 2010 WL 335023, at *3 (quoting Milton v. Rosicki, Rosicki & Assocs., P.C., No. 02-CV-3052, 2007 WL 2262893, at *3 (E.D.N.Y. Aug. 3, 2007)).

Plaintiffs' complaint alleges that they became afraid, worried, upset, embarrassed, and suffered emotional distress as a result of ACS' actions and requests damages for each Plaintiff pursuant to 15 U.S.C. § 1692k(a)(1). But Plaintiffs' damages memorandum neither details nor requests actual damages. Accordingly, this Court will give no further consideration to this issue, and will not grant an award for actual damages.

### 3. Attorney's Fees and Costs

The FDCPA provides for the recovery of reasonable attorney's fees and costs by successful litigants. See 15 U.S.C. § 1692k (a)(3) (permitting recovery of, "in the case of any successful motion to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court").

In Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 493 F.3d 110 (2d Cir. 2007), *amended on other grounds by*, 522 F.3d 182 (2d Cir. 2008), the Second Circuit "undertook to simplify the complexities surrounding attorney's fees awards that had accumulated over time" in the circuit and district courts. Simmons v. N.Y.C. Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009). In particular, the court sought to reconcile the "lodestar" method of determining fees (the product of the attorney's usual hourly rate and the number of hours billed, subject to adjustment based on case-specific considerations to arrive at a "reasonable fee"), with the method developed in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974) (which considered twelve specific factors to arrive at the "reasonable fee"). Arbor Hill, 493 F.3d at 114. "Relying on

the substance of both approaches, [the Second Circuit] set forth a standard that [it] termed the 'presumptively reasonable fee.'"  Simmons, 575 F.3d at 174.

District courts now are directed to set a reasonable hourly rate, bearing in mind all the case-specific variables the Second Circuit and other courts have identified as relevant to the reasonableness of attorney's fees, and then use the reasonable hourly rate to calculate a "presumptively reasonable fee."  Arbor Hill, 493 F.3d at 117.

"[T]he most critical factor in a district court's determination of what constitutes reasonable attorney's fees in a given case is the degree of success obtained by the plaintiff."  Barfield v. N.Y.C. Health & Hosps. Corp., 537 F.3d 132, 152 (2d Cir. 2008) (citations and quotations omitted).  After Arbor Hill, the presumptively reasonable fee is "what a reasonable, paying client would be willing to pay," given that a client "wishes to spend the minimum necessary to litigate the case effectively."  493 F.3d at 112, 118.

To arrive at that fee, district courts must also consider the twelve Johnson factors: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  Johnson, 488 F.2d at 717-19.

Finally, a district court must consider that a client may be able to negotiate with his or her attorneys, based on their desire for the reputational benefits that could accrue from

association with the case.  Arbor Hill, 493 F.3d 119.

Plaintiffs' attorney, Frank J. Borgese, practices law in this district and has spent his career working in consumer rights and in FDCPA matters. Given his experience, and in light of this Court's previous decision, his request for compensation of $180 per hour is reasonable.  See Coles v. Lieberman, Michaels & Kelly, LLC, No. 10-CV-484S, 2011 WL 3176467, at *5 (W.D.N.Y. July 27, 2011) (finding Borgese's $180 per hour fee reasonable). Further, the 13.8 hours of attorney-time, and 1.0 hour secretarial/paralegal work, billed for this case are reasonable. See id. (limiting recovery to 15 hours where Defendant did not appear and attorney was experienced in consumer rights and FDCPA matters). Accordingly, this Court will award 13.8 hours of attorney time at $180 per hour, for $2,484 in attorney's fees.  This Court will also award $60 in secretarial/paralegal fees, $350 for the filing fee, and $140 for service of process.

### IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Default Judgment is granted. Plaintiff Katherine Hinderliter is awarded $250 in statutory damages.  Plaintiffs Michael Hinderliter, Marlene Bonafede, and Frank Bonafede are each awarded $500 in statutory damages. Additionally, Plaintiffs are awarded $3,034 for attorney's fees and costs.

### V. ORDERS

IT HEREBY IS ORDERED, that Plaintiffs' Motion for Default Judgment (Docket No. 10) is GRANTED.

FURTHER, that the Clerk of Court is directed to enter judgment in favor of Plaintiffs

in the amount of $4,784.

FURTHER, that the Clerk of Court shall close this case upon entry of judgment.

SO ORDERED.

Dated:   February 5, 2012
         Buffalo, New York

                                              /s/William M. Skretny
                                             WILLIAM M. SKRETNY
                                                  Chief Judge
                                          United States District Court